UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM HAROLD WRIGHT, JR.,
    Prisoner,
v.                                          Case No. 8:21−cv−2691−KKM−SPF
                                                Case No. 8:16-cr-422-KKM-SPF
UNITED STATES OF AMERICA,
    Respondent.
_____

**ORDER**

Prisoner William Harold Wright, Jr., moves under 28 U.S.C. § 2255 to vacate his convictions for conspiring to possess and possessing heroin and his sentence of 300 months. He raises five grounds for relief. Because his claims lack merit, are procedurally barred, or are procedurally defaulted, his motion under § 2255 is denied.

**I.    Background**

From 2015 to 2016, Wright led a drug-trafficking organization that distributed between 18 and 30 kilograms of heroin within the Middle District of Florida. (Crim. Doc. 233 at ¶12.) Wright and six co-conspirators transported the heroin concealed inside household furniture from Los Angeles, California, to Pinellas County, Florida. (*Id*.) After transporting the heroin, Wright and his co-conspirators removed the heroin from the furniture, cut it, and repackaged it for distribution. (*Id*.)

After a six-day trial, a jury found Wright guilty of conspiracy to possess with the intent to distribute and distribution of one kilogram or more of heroin, in

1

violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One), and six substantive counts of possessing and aiding and abetting another in possessing heroin with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (Counts Two through Seven). (Crim. Doc. 251 at 1.) The district court imposed concurrent sentences of 300 months for the the conspiracy offense, 240 months for the possession offenses in Counts Two through Four, and 300 months for the possession offenses in Counts Five through Seven. (*Id*. at 4.) The appellate court affirmed Wright's convictions and sentence. *United States v. Wright*, 825 F. App'x 676 (11th Cir. 2020).

**II. Legal Standard**

Section 2255 allows a federal prisoner to "bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215–16 (11th Cir. 2014). But "[o]nce the defendant's chance to appeal has been waived or exhausted, [a court is] entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (*per curiam*) (citing *Frady*, 456 U.S. at 165). Because collateral review is not a substitute for direct appeal, a defendant must raise on direct appeal all available claims. Relief under Section 2255 is reserved "for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Richards v. United States*, 837 F.2d 965,

2

966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep. 1981)). For example, a claim of ineffective assistance of counsel is a claim that "should usually be raised in a motion under 28 U.S.C. § 2255." *United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013).

III. **Analysis**

Wright now moves to vacate his convictions and sentence and raises six arguments: (1) that his Confrontation Clause rights were violated when he was unable to cross examine a non-testifying law enforcement witness; (2) that the district court constructively amended the indictment; (3) that the prosecution engaged in misconduct; (4) that the district court miscalculated the sentencing guidelines; and (5) that his sentence violates *Alleyne v. United States*, 570 U.S. 99 (2013).

    A.    **Ground One**

Wright claims that his Sixth Amendment right to confront the witnesses against him was violated because he was prevented from cross-examining Special Agent Nowak about Nowak's probable cause affidavit, which was presented to the grand jury. (Civ. Doc. 4 at 4; Civ. Doc. 5 at 6–11; Civ. Doc. 37 at 9–16; Crim. Doc. 1) On the sixth day of trial, Wright notified the district court that he intended to call Nowak to testify, stating that he "should have the opportunity to cross-examine and face his accuser." (Crim. Doc. 273 at 5.) The United States moved both to quash any subpoena issued to Nowak and to limit any further questioning on Nowak's affidavit. (Crim. Doc. 186.) The United States argued that Nowak's proposed testimony lacked relevance and that "Agent Nowak's participation in

the grand jury does not create a right of confrontation." (Crim. Doc. 273 at 6.) The district court granted the government's motion (Crim. Doc. 193), reasoning (Crim. Doc. 273 at 3–7):

> [T]he government is correct that whatever testimony [Nowak] may have provided to the grand jury or placed into an affidavit, submitted to the magistrate judge as a probable cause affidavit, is not relevant to whether or not the defendant committed the offenses alleged in the indictment.
>
> Had [Nowak] testified as part of the government's case, we would be in a different scenario, but he has not testified and his participation in the grand jury process or in the complaint stage does not implicate the defendant's confrontation rights under the Sixth Amendment at trial.
>
> Moreover, [*United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir.), *cert. denied*, 459 U.S. 973 (1982)] is binding precedent on this court and it holds in essence that absent compliance with the federal regulations, a Department of Justice employee may not be called as a witness by a defendant. There has been no showing of compliance with those regulations.

Wright raises two reasons he ought to have been allowed to cross examine Nowak. First, Wright argues that, although the United States did not call Nowak to testify or admit his affidavit at trial, he should have been able to cross-examine Nowak because the United States elicited testimony from coconspirator Robert Lorenzo Lee that directly contradicts averments in Nowak's affidavit. (Civ. Doc. 37 at 14–15.) Specifically, he points to Lee's testimony that he picked up wooden crates containing heroin concealed inside household furniture "[b]etween seven

4

and nine times." (Crim. Doc. 270 at 215.) This testimony, Wright argues, contradicts Nowak's affidavit, in which he avers that Lee said that "he picked up 3-4 packages." (Crim. Doc. 1 at 6.)

Second, Wright argues he should have been able to cross-examine Nowak because the United States elicited testimony from coconspirator Ernest Wooten that paraphrased averments in Nowak's affidavit. (Civ. Doc. 37 at 14–15.) Wright points to Wooten's testimony that Lee "would come by and pick up three ounces at a time." (Crim. Doc. 271 at 221.) This testimony, Wright argues, paraphrases Nowak's averment that Wooten said that Wright instructed Lee to obtain the heroin from Wooten "three (3) ounces at a time, several times a week." (Crim. Doc. 1 at 7.)

The Sixth Amendment guarantees that a criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend VI. "The Confrontation Clause serves to 'ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.'" *United States v. Taylor*, 688 F. App'x 638, 642 (11th Cir. 2017) (quoting *Maryland v. Craig*, 497 U.S. 836, 845 (1990)). In doing so, "[i]t applies to witnesses against the accused—in other words, those who bear testimony." *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (quotations omitted).

As for the right to compulsory process, "more than the mere absence of testimony is necessary to establish a violation of th[at] right." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). "[T]he Sixth Amendment does not . . .

grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses; it guarantees him 'compulsory process for obtaining *witnesses in his favor*.'" *Id*. (emphasis in original) (quoting U.S. Const. amend. VI). The right to compulsory process is violated when the defendant is deprived of testimony that is "'*relevant* and *material*, and . . . *vital* to the defense.'" *Id*. (emphasis in original) (quoting *Washington v. Texas*, 388 U.S. 14, 16 (1967)).

Furthermore, Department of Justice ("DOJ") regulations prohibit DOJ employees from testifying about information acquired during the performance of their official duties without prior approval of the Attorney General of the United States. 28 C.F.R. § 16.21, *et seq*. These regulations require the party seeking testimony to provide an affidavit or written statement to the DOJ setting forth a summary of the testimony sought so that the DOJ can determine whether to authorize the testimony. 28 C.F.R. §§ 16.23(c) and 16.24. A DOJ employee may not be compelled to obey a subpoena against the DOJ's instructions under these regulations. *Bizzard*, 674 F.2d at 1387 (rejecting a Confrontation Clause challenge by a criminal defendant and affirming the quashing of a subpoena of a DOJ employee when regulations prohibited the employee from testifying); *see also United States v. Dunn*, 533 F. App'x 908, 909–10 (11th Cir. 2013) (relying on *Bizzard* to affirm the district court's exclusion of a government agent as a defense witness).

Wright's claim that his right to confront the witnesses against him was violated because he was prevented from cross-examining Nowak lacks merit. The United States did not offer Nowak's complaint affidavit into evidence, nor did the United States elicit any testimony about the affidavit. Wright's vague assertion that co-conspirators' testimony may have contradicted or paraphrased Nowak's

6

affidavit is insufficient to show that Nowak's testimony was material or vital to his defense. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'") (citations omitted); *see also Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir. 2008) (affirming the denial of § 2255 relief because the petitioner failed to allege "reasonably specific, non-conclusory facts with respect to his claim such that there was a reasonable probability sufficient to undermine confidence in the outcome").

Furthermore, Wright fails to demonstrate that the district court erred in relying on *Bizzard* to quash any proposed subpoena of Nowak or to limit testimony about Nowak's complaint affidavit. Wright also neglects to argue that he complied with DOJ regulations or obtained authorization from the DOJ to subpoena Nowak. Consequently, Wright's claim presented in Ground One lacks merit and entitles him to no relief.

### B. Ground Two

Wright claims that the indictment was deficient because it failed to specify the location of the charged conspiracy or name his co-conspirators and because it provided an "open-ended" date for the conspiracy. (Civ. Doc. 4 at 5; Civ. Doc. 5 at 12–14; Civ. Doc. 37 at 5–8.) He argues that, by denying his motion to dismiss the indictment for insufficiently informing him of the conspiracy charged against him, the district court constructively amended the indictment. (*See generally*, *id*.)

The United States contends (correctly), (Civ. Doc. 20 at 15), that this claim is procedurally barred because the appellate court resolved the claim against Wright.

"A procedural bar prevents a defendant from raising arguments in a § 2255 proceeding that he raised and [the appellate court] rejected on direct appeal." *Seabrooks v. United States*, 32 F.4th 1375, 1383 (11th Cir. 2022) (citing *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014)).

Before trial, Wright moved to dismiss the indictment, arguing that it failed to specify the location of the conspiracy or name his co-conspirators and also because it provided an "open ended" date for the conspiracy. (Crim. Doc. 65.) The district court denied the motion, concluding that "the indictment alleges the essential elements of the charged offenses, adequately notifies [Wright] of the charges, and enables him to rely on any judgment entered under the Indictment as a bar against double jeopardy." (Crim. Doc. 77 at 3–4.)

On appeal, Wright repeated this challenge to the indictment, and the appellate court rejected it, concluding, "Wright's indictment was sufficient as to the conspiracy charge even though it did not specify a location narrower than the Middle District of Florida and did not list his co-conspirators by name." *Wright*, 825 F. App'x at 679. The appellate court found that the indictment "was not open-ended" but rather "provided enough notice to Wright of the dates of the alleged conspiracy to 'conform[] to minimal constitutional standards." *Id.* (quoting *United States v. Varkonyi*, 645 F.2d 453, 456 (5th Cir. Unit A 1981)).

Wright's claim that the district court constructively amended the indictment is procedurally barred. The appellate court specifically addressed and rejected the claim that the conspiracy charged in the indictment was deficient because it failed to inform Wright of the charged conspiracy. Consequently, the Court declines to consider the merits of the claim. *See, e.g.*, *United States v. Nyhuis*, 211 F.3d 1340,

8

1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal."); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994) (concluding that the "district court properly refused to substantively address the [§ 2255 petitioner's] remaining contentions" that the appellate court "already rejected"); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981) ("This Court is not required on § 2255 motions to reconsider claims of error raised and disposed of on direct appeal.").

### C. Ground Three

Wright claims that the prosecution engaged in misconduct when it intentionally presented the false and misleading testimony of Nowak to the grand jury. (Civ. Doc. 4 at 7; Civ. Doc. 5 at 15–22; Civ. Doc. 37 at 17–18.) He argues, without any explanation, that the United States "was fully aware" that Nowak's affidavit was false and misleading. (Civ. Doc. 4 at 7.) He argues that the district court summarily rejected his claim of prosecutorial misconduct and neglected to "[go] on record and [give] a finding why the court [denied] the motion." (Civ. Doc. 37 at 17.)

Prosecutorial misconduct may serve as a basis for relief under § 2255 if the misconduct is so great that it "renders the defendant's trial so fundamentally unfair that the resulting conviction is a denial of due process." *Davis v. Zant*, 36 F.3d 1538, 1545 (11th Cir. 1994) (quotations omitted). "Although it is not the task of a habeas court to retry the defendant, the standard for reviewing prosecutorial misconduct requires a weighing of the nature and scope of the instances of misconduct against the evidence of guilt against the accused." *Id*. at 1546. "Clearly, where the evidence against the accused is very strong, in order to merit relief,

prosecutorial misconduct would have to be even more egregious and pervasive than in cases where the evidence is less compelling[.]" *Id*.

Contrary to Wright's assertions, the record shows that the district court thoroughly considered and rejected his allegation of prosecutorial misconduct. After reviewing Wright's motion to inspect the grand jury minutes, the government's opposition to the motion, and Wright's reply, the district court denied the motion, explaining its reasoning in a written order that Wright failed to demonstrate prosecutorial misconduct through the use of false testimony:

> Defendant alleges the prosecutor "committed prosecutorial delay to gain a tactical advantage," "secured false misleading, and coerced testimony" before the grand jury, the "presentation to the grand [jury] solely rest [sic] on hearsay testimony," the Government used "entrapment to secure testimony from allege [sic] co-conspirators" and presented hearsay testimony in lieu of witnesses. . . .
>
> To show prosecutorial misconduct through use of false testimony, he must show that the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony, and that the falsehood was material. *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010). When the alleged prosecutorial misconduct occurs in a grand jury proceeding, the misconduct must have "substantially influenced the grand jury's decision to indict" or there must be "grave doubt that the decision to indict was free from the substantial influence of such violations." *United States v. Cavallo*, 790 F.3d 1202, 1219 (11th Cir. 2015). Defendant makes no such showing. And the use of hearsay before the grand jury does not invalidate an indictment. *See United States v. Akel*, 337 F. App'x 843, 858

> (11th Cir. 2009), citing *United States v. Williams*, 504 U.S. 36, 50, 112 S. Ct. 1735, 1744, 118 L. Ed. 2d 352 (1992) ("In *Costello v. United States*, 350 U.S. 359, 76 S. Ct. 406, 100 L. Ed. 397 (1956), we declined to enforce the hearsay rule in grand jury proceedings, since that 'would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules.'").

(Crim. Doc. 116 at n.1). Ultimately, the district court concluded that Wright's "[u]nsubstantiated allegations [of prosecutorial misconduct] do not demonstrate [a] 'particularized need' . . . to justify access to [the] grand jury proceedings." (*Id.*)[1]

Beyond his own conclusory assertions of prosecutorial misconduct, Wright omits any explanation of how the prosecution allegedly misled the grand jury or wrongly secured a warrant. Wright vaguely points to a supposed discrepancy between the date law enforcement began its investigation into the conspiracy—which Nowak avers is April of 2015, (Crim. Doc. 1 at 3)—and the date law enforcement became aware of Wright's involvement in the conspiracy—which

---

[1] Additionally, the district court explained its ruling on the record during the first day of trial (Crim. Doc. 268 at 262):

MR. WRIGHT: So if he gave false and misleading testimony to the grand jury to get me indicted, that ain't prosecutorial misconduct?

THE COURT: It's not in front of this jury, it's not prosecutorial misconduct, no, sir. If that's something that happened before the grand jury, that's a whole different matter. But as far as this jury is concerned, [the United States] [has] the responsibility of proving this case beyond a reasonable doubt. And it's not a defense to show that according to you somebody misrepresented something to a magistrate judge to get a search warrant.

MR. WRIGHT: No, . . . to get me arrested and indicted.

THE COURT: The grand jury is who indicted you sir[.]

11

Nowak avers is July of 2016, (*id*). He neglects to explain the significance of this discrepancy or how the United States knew or should have known of this discrepancy. Wright's claim is based solely on his *belief* that Nowak provided false or misleading testimony in his complaint affidavit or to the grand jury. His claim ignores the evidence admitted at trial that showed his involvement in a conspiracy to distribute heroin within the Middle District of Florida since 2015. Wright fails to show that alleged prosecutorial misconduct through false testimony "render[ed] [his] trial so fundamentally unfair that the resulting conviction is a denial of due process." *See Davis*, 36 F.3d at 1545. Consequently, Wright's claim presented in Ground Three lacks merit and entitles him to no relief.

### D.     Ground Four

Wright claims that the district court relied on materially false evidence and refused to consider rebuttal evidence, when determining the quantity of heroin attributable to him at sentencing.[2] (Civ. Doc. 4 at 8; Civ. Doc. 5 at 23–28; Civ. Doc. 37 at 2–4; Crim. Doc. 277 at 14–31.) He argues that the district court refused to consider evidence to rebut co-conspirator Robert Lorenzo Lee's false testimony that he picked up seven to nine shipments of heroin. (Crim. Doc. 277 at 19–30.)

Contrary to Wright's assertions, the record shows that the district court thoroughly considered but rejected his argument that the quantity of heroin attributed to him was based on Lee's false testimony.[3] Furthermore, the United

---

[2] Under U.S. Sentencing Guideline Section 2D1.1(c)(3), the presentence report applied a base offense level of 34 because Wright was held accountable for 18 to 30 kilograms of heroin. (Crim. Doc. 233 at ¶ 27.)

[3] The district court overruled his objection to the quantity attributed to him in the presentence report, reasoning:

> But Mr. Wright, you must not have been listening carefully. Mr. Lee testified that he picked up 7 to 9 shipments—or more, in his

12

States argues (Civ. Doc. 20 at 11–12), and the Court agrees, that this claim is not cognizable. "Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014 (en banc). "When a prisoner, like [Wright] alleges that his 'sentence was imposed in violation of the [Constitution or] laws of the United States . . . or is otherwise subject to collateral attack,' 28 U.S.C. § 2255(a), a district court lacks the authority to review the alleged error "unless the claimed error constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of justice[.]'" *Id.* at 1138 (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Such a miscarriage of justice occurs when the prisoner is innocent. *Id*. at 1139. In contrast, lessor errors—such as sentencing miscalculations—are not cognizable on collateral review. *Id*. at 1138–40.

"When a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his

---

> words—each including a kilo or more of heroin, each of which was then what he called expanded or obviously cut into two kilos, essentially doubling the quantity.
>
> He did describe picking up on March 9th of 2016 and April 26th of 2016, but he also described meeting with you and cutting and mixing the heroin, essentially doubling it.
>
> So using conservative figures based on this testimony alone, if seven loads were picked up, shipments from California in wooden crates by the defendant according to Mr. Lee, and that would be seven—at least seven kilos and then doubled by the cutting process, that would take it to 14 kilos.
>
> And on June 14th Mr. Lee described the pickup and on the 15th of June, keeping two kilos and giving one to Butch. And then Mr. Kitchen taking two kilos to Atlanta. So there is at least three additional kilos which would add up to 17 kilos.
>
> Under 2D1.1(c)(3), if a preponderance of the evidence demonstrates a quantity to be between 10 and 30 kilos, a level 34 is appropriate. So the objection is overruled[.]

13

crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice." *Id.* at 1139. A guidelines miscalculation cannot constitute a complete miscarriage of justice because the guidelines are advisory. *Id.* at 1140; *see also Godwin v. United States*, No. 19-14273-E, 2020 WL 6342962, at *3 (11th Cir. July 13, 2020) (relying on *Spencer* to deny a certificate of appealability on a claim that the sentencing court miscalculated the advisory guidelines).

Wright's 300-month sentence is below the statutory maximum term of life imprisonment for the charged conspiracy. (Crim. Doc. 233 at ¶ 124.) He does not claim to be actually innocent of his offenses of conviction, and his convictions have not been vacated. Consequently, his claim that the district court relied on a co-conspirator's false testimony when determining the drug quantity attributable to him at sentencing is not cognizable and entitles him to no relief.

### E. Ground Five

Wright claims that the district court imposed a ten-year mandatory minimum term of imprisonment for the conspiracy offense in violation of *Alleyne v. United States*, 570 U.S. 99 (2013). (Civ. Doc. 5 at 29–32.) *Alleyne* holds that any fact that increases a mandatory minimum sentence constitutes an element of the offense that must be submitted to the jury and proven beyond a reasonable doubt. Wright erroneously contends that the district court erred in failing to require the jury to determine the quantity of heroin involved in the conspiracy.

The United States argues (Civ. Doc. 20 at 12–15), and the Court agrees, that Wright procedurally defaulted this claim because he raised it neither at trial nor on appeal. "[A] 'procedural default' occurs when a defendant raises a new

14

challenge to his conviction or sentence in a § 2255 motion." *Seabrooks v. United States*, 32 F.4th 1375, 1383–84 (11th Cir. 2022) (citing *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004)). "'The procedural-default rule is . . . a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.'" *Foster v. United States*, 996 F.3d 1100, 1106 (11th Cir. 2021) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

"If a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is excused." *Seabrooks*, 32 F.4th at 1384 (citing *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011)). "To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice, or actual innocence." *Id*.

### 1. Cause

As cause to excuse his procedural default, Wright vaguely claims that appellate counsel was ineffective for failing to challenge his sentence under *Alleyne*. (Civ. Doc. 5 at 32.) In one sentence, and without any explanation, he contends that "the [*Alleyne*] issue was not raise[d] on direct appeal since appellate counsel was [ineffective]." (*Id*.) Wright concedes that he did not properly raise an ineffective-assistance-of-counsel claim in his amended section 2255 motion or in his reply. (Civ. Doc. 49 at 4 and Civ. Doc. 51 at 2.) Nevertheless, even if Wright properly raised an ineffective-assistance-of-counsel claim, such claim must have merit to excuse the procedural default. *See Nyhuis*, 211 F.3d at 1344.[4]

---

[4] To explain at which stage of Wright's prosecution he was represented by counsel and at which stage he proceeded without counsel, this Court adopts the appellate court's thorough description of Wright's "history of being dissatisfied with his representation: five different counsel and six appointments and discharges within the span of less than two years." *Wright*, 825 F. App'x at 680–81.

15

Title 21 U.S.C. §§ 846 and 841(b)(1)(A) impose a ten-year minimum mandatory sentence when the offense involves one or more kilograms of heroin. The jury found beyond a reasonable doubt: (1) that Wright conspired to possess heroin with the intent to distribute it, and (2) that the conspiracy involved at least one kilogram of heroin. (Crim. Doc. 202 at 1.) The jury determined the quantity of heroin involved in the conspiracy by checking the box next to "One (1) Kilogram or more[.]" (*Id.*) Consequently, Wright's sentence was imposed in accord with the law and presents no *Alleyne* problem.

Wright cannot show that appellate counsel's alleged ineffectiveness constitutes cause to excuse his procedural default. Appellate counsel was not ineffective for failing to raise a meritless challenge to his sentence under *Alleyne*. *See Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance.").

### 2. Prejudice

Even if Wright could establish that appellate counsel's performance was ineffective, he would have to demonstrate that he suffered actual prejudice from the alleged ineffectiveness. "'Actual prejudice means more than just the possibility of prejudice; it requires that the error worked to the petitioner's actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Granda v. United States*, 990 F.3d 1272, 1288 (11th Cir. 2021) (quoting *Fordham v. United States*, 706 F.3d 1345, 1350 (11th Cir. 2013). "The actual prejudice standard is 'more stringent than the plain error standard.'" *Id.* (quoting *Parks v. United States*, 832 F.3d 1244, 1245 (11th Cir. 1987)). Wright cannot demonstrate he was prejudiced by appellate counsel's performance because, despite his assertions

to the contrary, the jury found beyond a reasonable doubt that the conspiracy involved at least one kilogram of heroin.

### 3. Actual Innocence

Because Wright demonstrates neither cause nor prejudice, his procedural default can be excused only if he demonstrates his actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). To show actual innocence of the offense of conviction, a movant "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in the light of the new evidence of innocence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The "prototypical example of 'actual innocence' in a colloquial sense is the case where the government has convicted the wrong person of the crime." *Sawyer*, 505 U.S. at 349.

Wright does not contend that he is factually innocent of his offenses of conviction. And, appellate counsel's failure to challenge his sentence under *Alleyne* does not constitute deficient performance nor has Wright shown a substantial probability that a challenge to his sentence under *Alleyne* would have been successful because his sentence was imposed in accord with the law. *Delva v. United States*, 851 F. App'x 148, 154 (11th Cir. 2021). Consequently, Wright is not excused from his procedural default of his claim that his sentence was imposed in violation of *Alleyne*.

## III.   Evidentiary Hearing

An evidentiary hearing is not required if the § 2255 motion "and the files and records of the case conclusively show that the petitioner is entitled to no

17

relief." 28 U.S.C. § 2255(b). Because the record conclusively demonstrates that Wright's claims lack merit and are procedurally barred or defaulted, no evidentiary hearing is required. *See Ramirez v. United States*, 260 Fed. App'x 185, 187 (11th Cir. 2007) (citing *Smith v. Singletary*, 170 F.3d 1051, 1053–54 (11th Cir 1999)).

### IV.   No Certificate of Appealability

Wright is not entitled to a certificate of appealability ("COA"). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Wright must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Wright is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

### V. Conclusion

Wright's amended motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 4) is **DENIED** and a certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is similarly **DENIED**. Wright must obtain permission from the circuit court to appeal in forma pauperis.

The clerk is directed to enter a judgment against Wright, close this case, and enter a copy of this order in the criminal case. Additionally, Wright has filed five motions seeking miscellaneous relief (Civ. Docs. 52, 53, 55, 56, and 57), in which he repeats arguments already presented in his amended § 2255 motion and reply and raises other frivolous arguments. As such, all five motions (Civ. Docs. 52, 53, 55, 56, and 57) are **DENIED AS MOOT**.

**ORDERED** in Tampa, Florida, on February 15, 2023.

Kathryn Kimball Mizelle
United States District Judge